# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTONIA UDASCO-KIST** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 19-3176** |
| **v.** | : | |
| | : | |
| **THOMAS JEFFERSON** | : | |
| **UNIVERSITY HOSPITALS, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    JANUARY 25, 2021

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Antonia Udasco-Kist ("Plaintiff") filed this employment discrimination action against her former employer, Defendant Thomas Jefferson University Hospitals, Inc. ("Jefferson"), asserting claims of unlawful termination based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955 *et seq.*  Before this Court is Jefferson's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, in which Jefferson argues that Plaintiff has not produced sufficient evidence from which a reasonable factfinder could find that Jefferson's proffered legitimate, non-discriminatory reason for her termination is pretextual. [ECF 16, 17].  Plaintiff opposes the motion. [ECF 20].  The issues raised in the motion are fully briefed and ripe for disposition.  For the reasons set forth herein, Jefferson's motion for summary judgment is granted, and judgment is entered in favor of Jefferson on Plaintiff's ADEA and PHRA claims.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:[1]

In 2000, Plaintiff, then forty-five years old, began working at Jefferson as a Nuclear Medicine Technologist ("NMT"). As an NMT, Plaintiff's primary duties were to operate and maintain nuclear medicine imaging technology, perform diagnostic imaging, ensure radiation safety, and accurately perform quality control procedures. Plaintiff spent most of her career at Jefferson's Methodist Hospital Division ("MHD"), initially under the direct supervision of Chief NMT Marie Carr, and later, when Jefferson hired Cheryl Rickley as Chief NMT for both MHD and Jefferson's Center City Campus ("CCC") in April 2015, under Rickley's supervision.

Over the course of her employment, Plaintiff was generally well-regarded by her fellow NMTs and by Carr, and received mostly positive performance evaluations. However, beginning in 2013, Plaintiff made several serious errors for which she was disciplined in a manner consistent with Jefferson's Employee Disciplinary Procedures policy manual.

Jefferson's Employee Disciplinary Procedures policy manual provides that "when deemed appropriate," four stages of progressive discipline are to be used: "First Written Warning (Documented Discussion/Verbal Warning), Second Written Warning, Suspension/Final Warning, and Termination." [ECF 17-7 at 25]. "Depending on the particular circumstances, progressive discipline may be skipped in instances of serious violations of policy and/or procedures, or where there are repeated violations of policy and/or procedures." *Id.* at 27. The policy manual also provides that "[f]alsifying or providing false records, reports or information of any nature" is misconduct for which an employee "may" be "immediately dismissed." *Id.* at 27-28. The policy manual also includes a grievance procedure, which employees are reminded of when they receive Employee Disciplinary Action forms. *Id.* at 29.

Plaintiff's disciplinary record includes the following events: in January 2013, Plaintiff injected a patient with the wrong radiopharmaceutical. Carr had a "documented discussion" with Plaintiff concerning the error. In April 2013, Carr

---

[1]    These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any evidence is disputed, such disputes will be noted and construed in the light most favorable to Plaintiff. *Galena*, 638 U.S. at 196.

counseled Plaintiff about multiple errors, including mislabeling images, dosage errors, and imaging errors.  In January 2015, Plaintiff again injected a patient with the wrong radiopharmaceutical.  For this serious, repeated error, Carr gave Plaintiff a formal First Written Warning and required Plaintiff to undergo further training. In November 2015, while under Rickley's supervision, Plaintiff injected another patient with a radiopharmaceutical the patient did not need because the ordering physician had canceled the patient's test.  In disclosing the error to Dr. Charles Intenzo, the patient's treating physician, Plaintiff omitted that she had seen the cancelation order before she administered the dosage.[2]  When Dr. Intenzo learned that Plaintiff had known about the cancelation, he recommended that she be terminated both for the error and for her failure to admit the complete truth. However, Rickley instead gave Plaintiff a Final Warning in accordance with Jefferson's progressive discipline policy.

Plaintiff admits that she committed the aforementioned errors and that she knew her actions constituted violations of Jefferson's policies.  Plaintiff did not pursue grievances for any of these disciplinary actions, nor does she argue that any of the discipline imposed was inappropriate or influenced by age discrimination.

In late 2015, Jefferson implemented an initiative to train its NMTs to work at both its MHD and CCC campuses, rather than at only one location.  Under this initiative, MHD NMTs like Plaintiff trained at CCC, and vice versa.  At some point during Plaintiff's training at CCC, Plaintiff claims that she heard from a coworker that Rickley told another NMT that she [Rickley] "wished [Plaintiff] would just retire."[3]

Though Plaintiff was used to performing quality control ("QC") tests on the machines at MHD, she received training on how to perform the same tests using the machines at CCC.  The purpose of the QC test is to ensure that NMTs are not exposed to dangerous radiation from the radiopharmaceuticals they use.  The QC test at the CCC campus required the NMTs to wipe down boxes containing the radiopharmaceutical chemicals, then place both the wipes and a chip that emitted a certain amount of radiation within a predefined range (the "Cs137 Source") into the machine, called "the Wizard," which would then print out the QC test results. NMTs were required to enter those test results precisely into Jefferson's computer

---

[2]     In her response, Plaintiff contends she did not know the test had been canceled before she dosed the patient.  [ECF 20 at 23].  However, in her deposition, she also admitted that she saw the cancelation in the computer system *before* she dosed the patient, and that she assumed the cancelation was an error because the ordering physician had not told her about the cancelation when they spoke the previous day.  [Udasco-Kist Dep., ECF 17-3 at 235:5-237:22, 246:1-23, 247:24-248:8].

[3]     Plaintiff asserts that Rickley made this statement and relies on NMT Anthony Juliana's deposition in which he allegedly learned of Rickley's comment from NMT Tirath Nahar.  However, NMT Nahar denies having heard the comment.  In its filings, Jefferson denies that Rickley made the comment, and further argues that even if Rickley had said this, such testimony would be inadmissible hearsay.  For the purpose of this analysis *only*, this Court will assume Rickley made the statement.

system. If the value for the Cs137 Source fell outside the acceptable range, the QC protocol required the NMT to run the test again. If the value for the Cs137 Source was in an unacceptable range for a second time, the NMT was to notify a supervisor and take the Wizard out of service.

In January 2016, Plaintiff attempted to perform a QC test, but the Wizard did not produce a print-out with the results. Plaintiff then manually entered a made-up number within the acceptable range in order to bypass the system. When this attempt failed, Plaintiff had to notify a supervisor that the Wizard required service. When the supervisor notified Rickley, Plaintiff admitted to Rickley that she made up a value in an attempt to override the system. Plaintiff also admitted that she had previously rounded up the print-out values on several occasions (because they were "so close to the range") to bypass the QC test and be able to use the radiopharmaceuticals for procedures.[4] Upon learning of Plaintiff's actions, Rickley spoke with her own supervisors, the Administrator and the Associate Administrator at Jefferson. All three supervisors agreed that this particular instance of misconduct was so serious as to necessitate Plaintiff's termination. At the time of her termination on February 2, 2016, Plaintiff was sixty years old and had thirty-five years' experience as an NMT, fifteen of those years at Jefferson. Following Plaintiff's termination, Jefferson promoted part-time NMT Samantha Lockerby, then twenty-five years old, to Plaintiff's former position as a full-time NMT.

After discovering Plaintiff's wrongful actions, Rickley conducted an internal audit to ensure no other NMTs were falsifying QC inputs. This audit revealed that two other NMTs, Chris Dihn (age thirty) and Mai Nguyen (age twenty-eight), had made QC test errors. Neither employee had a prior disciplinary record. It was discovered that Dihn, like Plaintiff, rounded up the print-out values if the values were out of range but, unlike Plaintiff, did not make up values for incomplete tests. The Associate Administrator issued Dihn a Final Warning. Nguyen failed to run a repeat test, as required, when the values were out of range. Because Nguyen did not falsify or round up data, the Associate Administrator gave Nguyen a Coaching Record instead of more serious discipline.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this

rule provides that summary judgment is appropriate "if the movant shows that there is no genuine

---

[4]     In her deposition, Plaintiff stated for the first time that NMT Nahar had told her during training that rounding up was acceptable. Nahar denied this. NMT Dihn, who also rounded up, stated that no one told him that doing so was acceptable. Construing this dispute in Plaintiff's favor, this Court will assume Plaintiff was told during training that rounding up was acceptable. However, Plaintiff has not asserted that anyone told her to input false values when no print-out values were received.

4

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Under Rule 56, a court must view the evidence in the light most favorable to the nonmoving party.  *Galena*, 638 F.3d at 196.

Pursuant to Rule 56(c), the movant bears the initial burden of informing a court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.  After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P 56(c)(1)(A)-(B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings.  *Celotex*, 477 U.S. at 324.  Rather, the nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations and citations omitted).

**DISCUSSION**

Plaintiff claims that Jefferson unlawfully terminated her employment because of her age in violation of the ADEA[5] and PHRA.[6]  Jefferson disputes those assertions and moves for summary judgment on Plaintiff's claims on the basis that Plaintiff has not produced evidence from which a reasonable factfinder could find that Jefferson's articulated legitimate, non-discriminatory reason for her termination was a pretext for age discrimination.  This Court agrees with Jefferson.

Plaintiff's claims are examined under the analytical burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which applies to age discrimination claims under the ADEA and PHRA.[7]  *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995) (holding that *McDonnell Douglas* framework applies to ADEA claims).  To state a prima facie case for age discrimination under this framework, a plaintiff must show that:

> (1) she is more than forty years old; (2) she "was  qualified for the position" in question; (3) she "was subject to an adverse employment action despite being qualified;" and (4) the adverse action occurred under circumstances that raise an inference of discriminatory action.  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003).  This inference may be drawn through the more favorable treatment of similarly situated employees outside of the protected class.  *Id.* at 797 n.7.  If a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the

---

[5]    The ADEA provides: "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623.

[6]    The PHRA provides: "[i]t shall be an unlawful discriminatory practice . . . (a) For any employer because of the . . . age . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract." 43 Pa. Cons. Stat. § 955.

[7]    The United States Court of Appeals for the Third Circuit ("Third Circuit") has stated "that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)). Finding no such distinguishing language, the Third Circuit has interpreted the relevant provisions of the ADEA and the PHRA "as applying identically . . . and as being governed by the same set of decisional law." *Id.* (citing *Fogleman*, 283 F.3d at 567).

adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason for the decision is pretext. *Id.* at 804, 93 S. Ct. at 1825. A plaintiff must show "that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Sarullo*, 352 F.3d at 797. She must prove that age was the "but-for" cause of the employer's adverse decision to prevail on an age discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009).

*Lackey v. Heart of Lancaster Regional Medical Ctr.*, 704 F. App'x 41, 45-46 (3d Cir. 2017).

Here, Jefferson does not dispute that Plaintiff has set forth sufficient facts to establish a *prima facie* case for age discrimination under the applicable statutes. Similarly, Plaintiff does not argue that Jefferson's proffered reason for her termination—that Plaintiff falsified data for a necessary QC test while on Final Warning for other serious errors of improper administration of dosages to patient—is not a legitimate, non-discriminatory reason. However, Plaintiff argues that Jefferson's proffered reason was a pretext for age discrimination. Consistent with the *McDonnell Douglas* framework, the burden now shifts back to Plaintiff to present evidence of pretext.

### Pretext

To meet her summary judgment burden on pretext, Plaintiff must point to evidence sufficient for a reasonable factfinder to find that Jefferson's proffered reason for her termination was merely a pretext for age discrimination and not the actual motivation for her termination. This can be a "difficult task" for a plaintiff, arising "from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992). In essence, Plaintiff must present evidence sufficient to show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Grochowski v. Wilkes-Barre Behavioral Hospital Co.*, LLC, 2019

WL 361131, *6 (M.D. Pa. Jan. 29, 2019) (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997)).

To meet this burden, a plaintiff must "present evidence contradicting the core facts put forth by the employer, as the legitimate reasons for its decision," *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005), so that "a factfinder could reasonably conclude that each reason was a fabrication" or "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies[,] or contradictions" that show the employer's proffered reasons to be "unworthy of credence," *Fuentes*, 32 F.3d at 765, showing not merely that the employer's proffered reasons were wrong or mistaken but that the employer acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001). A plaintiff may meet this burden by presenting evidence to show, for example, that (1) the employer subjected the plaintiff to unlawful discriminatory treatment in the past, (2) the employer "treated other, similarly situated persons not of [the plaintiff's] protected class more favorably," or (3) the employer has discriminated against other members of the plaintiff's protected class or against other protected classes. *Id.* at 765.

Here, Plaintiff argues that Jefferson's proffered reason for her termination was pretextual because: (1) Plaintiff had a strong employment record prior to being supervised by Rickley and was in training at the time of the QC test incident that lead to her termination; (2) Rickley's remark that she wished Plaintiff would "just retire" supports an inference of discrimination; and (3) Jefferson treated similarly situated, younger employees who committed the same misconduct as Plaintiff more favorably. This Court will address each argument in turn.

### 1.  *Plaintiff's Employment Record and Training Status*

Plaintiff contends that a reasonable factfinder could find her more than thirty-five-year employment record as an NMT, including fifteen years at Jefferson, with overall positive evaluations sufficient, on its own, to show that Jefferson's proffered reason for termination was pretextual.  Plaintiff argues that her disciplinary record began after Rickley became her supervisor, which indicates Rickley's animus and a discriminatory motive.  In response, Jefferson argues that Plaintiff's employment record actually shows that she was disciplined on several occasions *prior* to Rickley becoming her supervisor and, thus, her employment record does not provide any evidence of animus or discriminatory motive.

The issue before this Court is strictly whether a reasonable factfinder could infer from Plaintiff's career record that Jefferson's proffered reason for termination was "so plainly wrong" that it was a pretext for a true motive of age discrimination.  *Grochowski*, 2019 WL 361131, at *6. This Court's role is not to "sit as a super-personnel department" that reexamines an employer's business decisions.  *Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 332 (3d Cir. 1995). Nor is the Court's consideration whether, on balance, Plaintiff's positive performance evaluations justified her retention.  *See Ezold*, 983 F.2d at 528 ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.").

Based on the facts, this Court finds Plaintiff's argument regarding her employment record and overall positive evaluations insufficient to support a reasonable inference of pretext.  Contrary to Plaintiff's suggestion, her disciplinary record indisputably began years before Rickley became Plaintiff's supervisor.  For example, in January 2013, Carr disciplined Plaintiff for giving a patient the wrong pharmaceutical; in April 2013, Carr again disciplined Plaintiff for mislabeling images,

dosing errors and imaging errors resulting; in January 2015, after Plaintiff administered another unnecessary dose to a patient, Carr imposed a First Written Warning and mandated she undergo further training.  Carr, not Rickley, imposed each of these disciplinary actions.  Under Rickley's supervision, Plaintiff gave a patient an unnecessary pharmaceutical dosage and failed to disclose that she knew the relevant order had been canceled—a serious and repeated offense for which Plaintiff could have been summarily terminated under Jefferson's Employee Disciplinary Procedures policy manual.  Instead of terminating her employment as recommended by the ordering physician, Rickley gave Plaintiff a Final Warning.[8]  Significantly, as noted, Plaintiff does not deny committing any of the misconduct that resulted in her progressive discipline and, ultimately, her termination, nor does she assert that any of the discipline she received—including the Final Warning from Rickley—was inappropriate under Jefferson's policies or motivated by age discrimination.

In addition, Plaintiff contends that Rickley "papered Plaintiff's file with disciplinary actions for minor infractions."  [Pltf.'s Response, ECF 20 at 6].  However, nothing in the record indicates that these minor infractions had any bearing on the ultimate decision to terminate her employment.  Ultimately, Plaintiff's employment record is not sufficient evidence from which a reasonable factfinder can infer that Jefferson's proffered reason for Plaintiff's termination was "so plainly wrong" that it was a pretext for age discrimination.  *Grochowski*, 2019 WL 361131, at *6.

Plaintiff also argues that she should not have been terminated while she was still in training.  In response, Jefferson contends that Plaintiff had received sufficient training on the importance of

---

[8]     Jefferson's progressive discipline policy permitted Rickley to issue Plaintiff a Final Warning (rather than a Second Written Warning) for her repeated, serious misconduct of mis-dosing a patient. "Depending on the particular circumstances, progressive discipline may be skipped in instances of serious violations of policy and/or procedures, or where there are repeated violations of policy and/or procedures." Ex. 33, ECF 17-7 at 25.  The mis-dosing incident that resulted in Plaintiff's Final Warning was both a serious and repeated violation of policy.  Notably, Dr. Intenzo recommended termination for this incident.

not falsifying data at the time she falsified the data that led to her termination, such that the fact that Plaintiff was technically still in training does not support any inference of pretext. Further, Plaintiff's training argument is disingenuous when she admits she knew not to falsify QC data, [Udasco-Kist Dep., ECF 17-4 at 421:11-21, 427:11-18], which she did, and when she admits that using the Wizard was an "easier" form of a QC test she had been performing for years. [Udasco-Kist Dep., ECF 17-3 at 353:11-354:4]. None of Plaintiff's arguments related to her training support a reasonable inference of pretext.

### 2. Rickley's Comment

Plaintiff argues that Rickley's comment that she wished Plaintiff would "just retire" supports an inference that Jefferson terminated her because of her age. In its motion, Jefferson contends that if Rickley made such a comment, it was a "stray remark" insufficient, on its own, to support an inference of age discrimination. In evaluating pretext, courts may consider as circumstantial evidence "the atmosphere in which the company ma[kes] its employment decisions." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641 (3d Cir. 1993). Circumstantial evidence may include "statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit . . . even if the statements are not made at the same time as the adverse employment decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002). However, "[s]tray remarks by non-decisionmakers *or by decisionmakers [but] unrelated to the decision process* are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold*, 983 F.2d at 545 (emphasis added). To determine whether a statement can constitute evidence of discriminatory animus, courts within the Third Circuit consider "whether the speaker was a decisionmaker, the content of the statement, and whether the statement was related to the

decisional process." *Kargbo v. Philadelphia Corp. for Aging*, 16 F. Supp. 3d 512, 524 (E.D. Pa. 2014). A stray remark "standing on its own" is generally "insufficient to demonstrate age-related animus." *Id.* at 528 (internal quotations and citation omitted).

Here, the comment in question was (allegedly) made by a decisionmaker, as Rickley was one of the three supervisors who decided to terminate Plaintiff. However, the comment was said to have been made in late 2015—months prior to Plaintiff's termination—and the record is devoid of any evidence suggesting that the comment "was related to the decisional process" to terminate Plaintiff. *Kargbo*, 16 F. Supp. 3d at 524. In a similar case, *Ortiz v. Cedar Crest College*, a recent panel of the Third Circuit considered whether a plaintiff's secondhand account of his supervisor calling him "old and antiquated" months before his dismissal was sufficient to show pretext in an age discrimination claim. 764 F. App'x. 257, 259-60 (3d Cir. 2019). In *Ortiz*, the Court held that, while such remarks may have been sufficient to get the plaintiff to trial in other circumstances, the record "overwhelmingly support[ed] [defendant's] reason for terminating [plaintiff]: he failed an essential duty of his job by not maintaining a reliable data backup scheme, resulting in a permanent loss of important data[.]" *Id.* at 260. In this case, this Court similarly finds that, while Rickley's comment may have been sufficient to allow an inference of discrimination in other circumstances, the evidentiary record here "overwhelmingly supports" Jefferson's proffered reason for Plaintiff's termination: Plaintiff's admitted falsification of data on a critical safety test while she was on Final Warning status due to multiple prior patient dosage errors. As noted, Plaintiff offers no evidence to indicate Rickley's comment was related to the decision to terminate Plaintiff, nor does she offer any evidence that, for example, Rickley made the comment to the other decisionmakers or that any decisionmaker considered (or was even aware of) the comment in making their decision to terminate Plaintiff. In fact, Plaintiff does not offer evidence that the other decisionmakers

considered anything other than Plaintiff's misconduct in reaching their decision.   Critically, Plaintiff admits to the conduct for which she was terminated and that she knew she was engaging in inappropriate conduct when she falsified values for the QC test.   Under these circumstances, Rickley's comment constitutes a stray remark, "standing on its own," *Kargbo*, 16 F. Supp. 3d at 528, and "unrelated to the decision process." *Ezold*, 983 F.2d at 545.   Therefore, the comment is insufficient to support an inference of pretext.

### 3.  *Jefferson's Treatment of Younger Employees*

Lastly, Plaintiff argues that Jefferson did not discipline NMTs Dihn and Nguyen similarly when they committed the same misconduct as Plaintiff.   Specifically, Plaintiff argues that these two younger coworkers constitute comparators who were treated more favorably for the same misconduct.   As noted, a plaintiff may show pretext through evidence that the employer "treated other, similarly situated persons not of [the plaintiff's] protected class more favorably[.]"  *Fuentes*, 32 F.3d at 765.   However, as Jefferson argues, NMTs Dihn and Nguyen were not similarly situated to Plaintiff because they did not have similar disciplinary records as Plaintiff and committed factually dissimilar misconduct.   It is the "plaintiff's task to demonstrate that similarly situated employees were not treated equally."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981).   Here, Plaintiff has failed to do so.

While all three employees—Plaintiff, Dihn, and Nguyen—committed misconduct by violating the QC test protocol, their specific misconduct is distinct from each other.   That is, Plaintiff entered a fabricated number for a QC test that was not performed—Dihn and Nguyen did not.   Instead, Dihn rounded up numbers for tests he did run, and Nguyen failed to run a repeat QC test, as required by Jefferson's policy.   Neither Dihn nor Nguyen fabricated print-out values for tests that were not performed, as Plaintiff did.   Additionally, Dihn and Nguyen did not have similar

disciplinary records as Plaintiff—in fact, they had *no* disciplinary records.  These differences in their actual misconduct and disciplinary history account for the different disciplinary actions that the employees received.  *See, e.g.*, *Brasher v. Thomas Jefferson University Hospital Inc.*, 676 F. App'x. 122, 125 (3d Cir. 2017) (finding younger employee not similarly situated to plaintiff because there was no evidence the younger employee "had [plaintiff's] history of documentation errors, which had been a factor in [defendant's] decision to terminate" plaintiff's employment).  While Nguyen was issued a Coaching Record and Dihn a Final Warning, neither employee had any disciplinary history to build on in accordance with Jefferson's four stages of progressive discipline.  In fact, Dihn's Final Warning bypassed two steps of Jefferson's progressive discipline policy, as permitted for serious offenses.  In contrast, Plaintiff had a record of two serious incidents of discipline and was already on Final Warning status, leaving termination as the next step in the progressive discipline policy.  Further, Plaintiff's offense of data falsification is serious enough to be specifically named in Jefferson's policy manual as an offense for which an employee may be immediately terminated.  Under these circumstances, no reasonable factfinder could find pretext evidenced by Jefferson's treatment of the other named employees.

Since Jefferson has articulated a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment, and Plaintiff has not presented evidence sufficient to show that Jefferson's proffered reason was a pretext for age discrimination, Plaintiff's ADEA and PHRA age discrimination claims fail as a matter of law.  Therefore, summary judgment on all claims is granted in favor of Jefferson.

**CONCLUSION**

For the reasons set forth herein, Jefferson's motion for summary judgment is granted. Accordingly, judgment on all claims is entered in favor of Jefferson.  An Order consistent with this Memorandum Opinion follows.


*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.